UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-23193-CV-MARTINEZ
CASE NO. 96-443-CR-MARTINEZ
MAGISTRATE JUDGE REID

ORESTES HERNANDEZ,

     Movant,

vs.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE RECOMMENDING GRANTING IN PART AND DENYING IN PART MOTION TO VACATE- 28 U.S.C. § 2255

### I. Introduction

This cause is before the Court upon a motion to vacate filed by Orestes Hernandez, *pro se*, pursuant to 28 U.S.C. § 2255 (the "Motion"). [Cv-DE 7]. Hernandez seeks to vacate his conviction as to Counts 3, 6 and 11. Movant raises as a sole ground for relief that he is actually innocent of these three 18 U.S.C. § 924(c) convictions because the predicate offenses for the convictions - Hobbs Act extortion and attempted Hobbs Act extortion - are no longer crimes of violence in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). [CV ECF No. 7 at 4].

    For the reasons set forth below, this Court recommends that Movant's Motion be GRANTED with respect to Count 3 but DENIED with respect to the remaining Counts.

    This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B); (C); Fla. Admin. Order 2019-2; and Rules 8 and 10 Governing Section 2255 Cases in the District Courts.

- 1 -

## II. Relevant Criminal Factual and Procedural History

### A. Factual Background

"Three separate episodes underlie the charges in [the underlying criminal] case." *United States v. Diaz,* 248 F.3d 1065, 1073 (11th Cir. 2001), *cert. granted, judgment vacated on other grounds sub nom. Echevarria v. United States,* 543 U.S. 1106 (2005). "First was the robbery and extortion of Nelson and Mercedes Gomez Martin on June 26, 1995." *Id.* "The second episode included the kidnapping and extortion of Jose and Idania Arias and their children on January 11, 1996." *Id.* "The final episode involved the November 4, 1996 attempted robbery of Rosa Gonzalez, Armando Gonzalez's housekeeper and the kidnapping and extortion of Armando Gonzalez on November 13, 1996." *Id.* "The Arias and Gonzalez episodes also involved carjacking, and firearms were used in all three episodes." *Id.*

### B. Indictment through Resentencing

Movant was charged in a superseding indictment with the following offenses:

- <u>Count 1</u>: conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951(b);

- <u>Count 2</u>: Hobbs Act extortion, based on the **Martin episode,** in violation of 18 U.S.C. § 1951(b);

- <u>Count 3</u>: using and carrying a firearm during and in relation to a crime of violence, as alleged in **Count 2 (Hobbs Act extortion)**, in violation of 18 U.S.C. § 924(c);

- <u>Count 4</u>: attempted Hobbs Act extortion, based on the **Arias episode,** in violation of 18 U.S.C. § 1951(b);

- <u>Count 5</u>: carjacking based on the **Arias episode**, in violation of 18 U.S.C. § 2119;

- <u>Count 6</u>: using and carrying a firearm during and in relation to a crime of violence, as alleged in **Count 4 (attempted Hobbs Act extortion) <u>and</u>** Count 5 **(carjacking)**, in violation of 18 U.S.C. § 924(c);

- Count 7: Hobbs Act robbery, based on the **Gonzalez episode,** in violation of 18 U.S.C. § 1951(b);

- Count 8: using and carrying a firearm during and relation to a crime of violence, as alleged in **Count 7 (Hobbs Act robbery)**, in violation of 18 U.S.C. § 924(c);

- Count 9: attempted Hobbs Act extortion, based on the **Gonzalez episode,** in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2;

- Count 10: carjacking, based on the **Gonzalez episode,** in violation of 18 U.S.C. § 2119;

- Count 11: using and carrying a firearm in relation to a crime of violence, as alleged in relation to **Count 9 (attempted Hobbs Act extortion) and Count 10 (carjacking)**, in violation of 18 U.S.C. § 924(c).

[CR ECF No. 330]; *see also Diaz,* 248 F.3d at 1081-82.

After trial, the jury returned a **general verdict,** finding Hernandez was not guilty of Count 8, but guilty on all remaining charges. [CR ECF 441]; *Diaz,* 248 F.3d at 1081-82. After an appeal which addressed issues relating to the carjacking statute and a new retroactive amendment to the sentencing guidelines, Movant was eventually sentenced to a total of 775 months of imprisonment. [CR ECF No. 659.  His sentence included a consecutive 60-month sentence for Count 3, and 240-month consecutive sentences on each of Counts 6 and 11. [*Id.*]. The Eleventh Circuit affirmed on appeal. *United States v. Hernandez,* 103 F. App'x 665 (11th Cir. 2004)(unpublished table decision), [CR ECF No. 694 at 7-9].

### C. Section 2255 Motions

After his conviction was affirmed, Movant filed a motion to vacate raising various constitutional errors in his conviction and several more applications to file successive motions to vacate; they were denied. In 2019, the Eleventh Circuit granted Movant's application to file a successive § 2255 motion as to his § 924(c) convictions in Counts 3, 6, and 11. [CV-DE1]. In granting the application, the Eleventh Circuit, explained that the United States Supreme Court in

*Davis* "struck down as unconstitutionally vague . . . the § 924(c)(3)(B)'s residual clause." [*Id.* at 3 (*citing Davis,* 139 S. Ct. at 2324-25, 2336]). Section 924(c) criminalizes using or carrying a firearm "during and in relation to a crime of violence." The statute defines a "crime of violence" as a felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A)-(B). Subsection (A) is called the "elements clause," and subsection (B) is the now-invalid "residual clause." *Davis* does not affect offenses that qualify as crimes of violence under the elements clause. *Davis*, 139 S. Ct. at 2324-25.

Noting that the § 924(c) counts were predicated at least in part on Hobbs Act extortion and attempted Hobbs Act extortion, that the jury had returned a general guilty verdict, and there was no binding precedent from the Eleventh Circuit or the United States Supreme Court addressing whether these crimes would still qualify as "crimes of violence" under the elements clause of § 924(c)(3)(A), which had not been stricken, the Eleventh Circuit granted Movant's application to file a successive § 2255 petition. [*Id.* at 4, 6-7]. The Eleventh Circuit concluded Movant had "made a *prima facie*" showing under [28 U.S.C.] § 2255(h)(2)" that his convictions as to Counts 3, 6, and 11 may be unconstitutional under *Davis*. [*Id.*].

Upon receipt of the Eleventh Circuit's opinion, the instant § 2255 proceeding was opened by the Clerk, the court entered an order appointing counsel to represent Movant, pursuant to 18 U.S.C. § 3006A, and set a briefing schedule. [CV ECF No. 3].

In his brief, claims the § 924(c) convictions should be vacated because the predicate offenses used to support the § 924(c) convictions, substantive and attempted Hobbs Act extortion, are no longer crimes of violence after *Davis.* [CV ECF No. 7].

- 4 -

The government concedes Movant is entitled to relief as to Count 3. [CV ECF No. 8 at 1]. The government concedes that Hobbs Act extortion and attempted Hobbs Act extortion are not a crimes of violence because they do not satisfy the elements clause of § 924(c)(3)(A). [CV ECF No. 8 at 1, 3]. However, noting that carjacking *is* a crime of violence under § 924(c)(3)(A)'s elements clause and the crimes in Counts 6 and 11 involved *both* carjacking and attempted Hobbs Act extortion, the government argues that Movant is not entitled to relief as to Counts 6 and 11. The government reasons that Hernandez cannot meet his burden of establishing a reasonable likelihood that the jury verdict as to those offenses was based solely on Hernandez using and carrying a firearm with respect to the attempted Hobbs Act extortion offense, rather than his act of using and carrying a firearm with regard to the carjacking offense, because the Hobbs Act extortion and the carjacking were so completely interrelated. [*Id.* at 1, 3-4, 7].

### III. Threshold Issues

### A. Prima Facie Case Under § 2255(h)

The Eleventh Circuit's determination granting a successive § 2255 motion still requires this Court, as a threshold matter, to determine *de novo* whether Movant has carried his burden under § 2255(h) to show he is entitled to file a second or successive motion to vacate. *See In re Moss,* 703 F.3d 1301, 1303 (11th Cir. 2013)(quoting *Jordan v. Sec'y, Dep't of Corr.,* 485 F.3d 1351, 1358 (11th Cir. 2007)).

Hernandez's claim fulfills this threshold requirement. Under 28 U.S.C. § 2255(h), Congress restricted post-conviction challenges to only two types of claims: (1) those based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense;" or, (2) those based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable." *See* 28 U.S.C. § 2255(h)(1)-(2). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

The Eleventh Circuit Court of Appeals in *Davis* "announced a new rule of constitutional law that retroactively applies to cases on collateral review." *See In re Hammoud*, 931 F.3d 1032, 1038-39 (11th Cir. 2019) (per curiam). Because Movant's § 2255 motion raises a *Davis* claim, which has since been made retroactively applicable by the Eleventh Circuit, Movant has satisfied the § 2255(h)(2) requirements and is entitled to file this second or successive § 2255 motion challenging his § 924(c) convictions under *Davis*.

### B. Procedural Default

The Court must next consider whether the claim was procedurally defaulted because Hernandez failed to raise it first on direct appeal. Hernandez did not argue at trial or on direct appeal that his § 924(c) convictions under Count 3, 6, and 11 were invalid because the § 924(c)(3)(B) residual clause was unconstitutionally vague. "[A] defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013). Hernandez is, therefore, procedurally defaulted this claim and cannot succeed on collateral review unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(c) convictions. *Id.*

Cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not reasonably available to counsel." *Rose,* 738 F. App'x at 626 (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998)). To demonstrate prejudice to warrant habeas corpus relief, a movant must show "not merely that the errors at trial [or sentencing] created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." *Brown v. United States,* 720 F.3d 1316, 1333 (11th Cir. 2013)(quoting *Frady,* 456 U.S. at 170). He must demonstrate a reasonable probability that but for the error, his convictions or sentences would have been different. *See Mincey v. Head,* 206 F.3d 1106, 1147 (11th Cir. 2000)(holding that the showing of prejudice necessary to overcome a procedural default is the same showing of prejudice required by *Strickland v. Washington*). An erroneous sentence under § 924(c) "affect[s] the defendant's substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Mays v. United States,* 817 F.3d 728, 737 n.12 (11th Cir. 2016)(citations omitted). Such an illegal sentence may warrant habeas corpus relief. *Mays,* 817 F.3d at 737 n.12.

Since this case was fully briefed, the Eleventh Circuit Court of Appeals issued its opinions in *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021) and *Foster v. United States*, 996 F.3d 1100 (11th Cir. 2021). These decisions are dispositive of the issues raised by Movant in this motion to vacate. In *Granda*, the Eleventh Circuit determined that while prior to Granda's challenge few, if any, litigants had contended that the § 924(c) residual clause was unconstitutionally valid, because other litigants had challenged other portions of § 924(c) as vague, the tools existed for Granda to challenge § 924(c)'s residual clause as vague. *Granda*, 990 F.3d at 1288. The same is true here. For the reasons discussed in *Granda*, Movant cannot show that his claim is "so novel that its legal basis [was] not reasonably available to [his] counsel." *Granda*, 990 F.3d at 1286 (quoting *Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004)).

Even though Movant cannot show cause for failing to raise this issue at trial or on appeal, the government concedes Movant is actually innocent as to Count 3 because Hobbs Act extortion, the only predicate offense for that § 924(c) charge, does not qualify as a predicate offense under the elements clause in § 924(c)(3)(A). Given the government's concession of error as to Count 3,

there has been a sufficient showing to overcome any procedural default as to Count 3. It is therefore recommended that Movant's § 2255 motion be granted as to Count 3, and the conviction as to that count be vacated, and Movant be resentenced. *See United States v. Fowler,* 749 F.3d 1010, 1016-17 (11th Cir. 2014)(internal quotation and brackets omitted).

The government does not concede error, however, with respect to Counts 6 and 11, because those convictions were not based solely on Hobbs Act extortion or attempted Hobbs Act extortion. As discussed below, Movant cannot show prejudice as to Counts 6 and 11 so that his *Davis* claim as to those two § 924(c) convictions remain procedurally defaulted.

### IV. Standard of Review

### A. Section 2255 – Merits

Hernandez cannot show prejudice with respect to Counts 6 and 11 because, after *Granda,* his claims with respect to Counts 6 and 11 cannot succeed.

Movant argues that *Stromberg v. California*, 283 U.S. 359 (1931), is instructive in his case. Under *Stromberg*, a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient. This is because the verdict may have rested exclusively on the insufficient ground. *Id*. As explained in *Granda*, however, after the Supreme Court decided *Stromberg*, it decided *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), which clarified that *Stromberg* error is subject to the *Brecht v. Abrahamson*, 507 U.S. 619 (1993) harmless error standard.

Under the *Brecht* standard, reversal is warranted only when the petitioner suffered "actual prejudice" from the error. *Brecht*, 507 U.S. at 637. In other words, "the harmless error standard mandates that 'relief is proper only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful.'" *Foster*, 996 F.3d at 1107

(citing *Davis v. Ayala*, 576 U.S. 257, 267– 68 (2015)). "Thus, it is proper to look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction - - or whether the jury instead (or also) found the defendant guilty under a valid theory." *Granda*, 990 F.3d at 1294. The burden to show that a jury *solely* relied on an invalid predicate for a § 924 conviction is the movant's to bear. *Granda*, 990 F.3d at 1288.

Under the facts here, Hernandez cannot meet this burden, because the valid predicate in this case – carjacking - was integral to the offenses and, as such, are inextricably intertwined with the presumably invalid Hobbs Act extortion predicate. The facts and jury instructions relevant to the issues pending before the court are summarized below.

### A. Count 6

Movant was charged in Count 6 with using and carrying a firearm during and in relation to two crimes of violence--attempted Hobbs Act extortion and carjacking--as set forth in Counts 4 and 5 of the Indictment. [CR ECF 330 at 7]. Count 6 was predicated on the January 11, 1996 events involving the Arias attempted extortion (Count 4) and carjacking (Count 5). *See also United States v. Diaz, et al.,* 248 F.3d at 1077-78 (internal citations to the record omitted).

The Eleventh Circuit succinctly summarized the evidence, supporting Count 6, charging Movant with using and carrying a firearm during and in relation to two crimes of violence--attempted Hobbs Act extortion and carjacking--as set forth in Count 4 and Count 5 of the indictment, as follows:

### Arias Episode (Counts 4 and 5)

\*       \*       \*

. . . On January 11, 1996, [Eladio] Munoz, [Sergio] Echevarria, Orestes Hernandez, and Ilvigio [Hernandez] began stalking the Arias family again. . . . After calling Idania Arias's billing service business and going to her [medical] clinic, they finally located her after going to her home where they observed her leaving with her four-year-old son Anthony. They followed her to the library, where she picked up her

eight-year-old son Joseph, and then back to her house. As she pulled into her driveway, Echevarria's white Jaguar pulled up behind her. Echevarria, Ilvigio, Orestes Hernandez, and Munoz got out and approached her with guns drawn. Idania Arias handed them her keys and told them to take what they wanted to which they responded that they wanted her and her children. Idania Arias and her two children were forced into the white Jaguar. Munoz stayed behind in order to steal Idania Arias's black Lexus.

Idania Arias's eyes, hands, and ankles were duct taped. Duct tape was also placed on the eight-year-old Joseph. Echevarria, who was driving, took them to International Alignment – a paint and body shop. When they got there, they drove inside to wait for Munoz. Idania Arias continually asked why she was being kidnapped, but they did not answer and told her to quit asking questions. She was told that "El Negro" (Munoz) would tell her why she was there when he arrived.

The kidnappers asked about Mr. Arias's whereabouts. According to Idania Arias, the kidnappers appeared to know everything about her clinic, her billing company, and her medical supply business. After about forty-five minutes, there was another cellular telephone call from Orestes Hernandez's telephone to Lopez and Diaz's home telephone. Ilvigio then beeped [Ismael] Camacho. When Camacho returned the call, he was instructed to come to the shop because they had some kidnapping victims.

Cellular telephone records from the time period when the Arias family was in the body shop revealed the multiple telephone calls and also revealed that the kidnappers tried to reach Mr. Arias at the medical clinic. The men forced Idania Arias to call her husband and tell him that she and the children had been kidnapped, and if he ever wanted to see them alive, he would have to meet the kidnappers at the clinic with $500,000. Jose Arias was warned not to call the police. The kidnappers intended on also seizing Jose Arias to insure that he did not go to the police. On his way to the clinic, however, Jose Arias called the police and never made it to the clinic.

The kidnappers returned from the clinic empty-handed. Munoz told Idania Arias they wanted $500,000 ransom. They explained to her that this was "their job" and that usually they burn, torture, and shock their victims. Idania Arias was hit, and the kidnappers threatened to kill her children if she did not raise the money. Idania Arias then was released to raise the ransom.

The children were kept at the warehouse overnight and then were taken to the Jamaica Inn around 5:00 a.m. the next morning. Ilvigio rented a room at the motel, and he and Munoz took the children there to wait for the ransom. Ilvigio kept Idania Arias's beeper so she could maintain contact with him regarding her progress in raising the $500,000.

Following her release, Idania Arias went to her parents' home where she was met by the Metro Dade Police. Upon meeting them, she was so terrorized that she did not believe they were really police officers. After she accepted that her husband

had contacted the police, she cooperated and went to the police station where an undercover telephone was set up for Idania Arias to phone the kidnappers. Idania Arias would page her beeper and Ilvigio would call her back immediately. The cellular telephone records for January 11 and 12, 1996 reflect multiple calls between Orestes Hernandez's cellular telephone, Ilvigio's cellular telephone, and the undercover telephone.

Following the advice of the police, Idania Arias told the kidnappers that she could raise only $250,000. Ilvigio and Munoz agreed to accept this amount, and Idania Arias arranged for a controlled delivery to the kidnappers of a package purporting to be the ransom money. The drop-off site was changed a number of times until the kidnappers finally decided on the cemetery, where Idania Arias was told to drop the money behind a white and red car. Both Ilvigio and Idania Arias testified that, while driving to the drop off site, Idania demanded to know the location of her children. Ilvigio informed her that they were in Room 43 at the Jamaica Inn.

Ilvigio, Munoz, Echevarria, Orestes Hernandez, and Camacho waited in two separate vehicles parked across the street from the cemetery. The men saw Arias approach the area as instructed and drop the purported money behind the white and red car. However, at that point they also saw the police converge upon the occupant of the car, Humberto Munoz (no relation to Eladio Munoz). Realizing that Idania Arias had gone to the authorities, the kidnappers left the area.

Later, Munoz drove Ilvigio home where, approximately five minutes after Ilvigio arrived, he was arrested. When Ilvigio was arrested, he still had Arias's beeper in his possession as well as the cellular phone used during the ransom negotiations. After Ilvigio confirmed to the police that the kids were in the Jamaica Inn, the children were safely recovered.

*Diaz*, 248 F.3d at 1077-78 (internal citations to record evidence omitted). At trial Ilvigio, one of the co-conspirators, testified that Movant's firearm was drawn at the time he kidnapped Idania Arias and her children. *Id*. at 1096 (internal citations to record evidence omitted).

## B. Count 11

Movant was charged in Count 11 with using and carrying a firearm during and in relation to two crimes of violence--attempted Hobbs Act extortion and carjacking--as set forth in Counts 9 and 10 of the Indictment. [CR ECF 330 at 11]. Count 11 was predicated on the November 13, 1996 events involving the Gonzalez attempted extortion (Count 9) and carjacking (Count 10). *See also United States v. Diaz, et al.*, 248 F.3d at 1080-81 (internal citations to the record omitted).

The Eleventh Circuit succinctly detailed the evidence supporting Count 11 as follows:

- 11 -

**Gonzalez Episode (Counts 9 and 10)**

\*        \*        \*

At approximately 6:00 a.m. on November 13, 1996, Armando Gonzalez exited his girlfriend's house and got in his Dodge ram truck. Gonzalez was stopped immediately by a white Caprice Chevrolet with flashing blue lights, which he believed to be a police car. Behind the "police car" was a Ford Explorer leased by Orestes Hernandez. Gonzalez pulled his vehicle over and saw several men dressed as police officers jump out of the white Chevrolet. The "police officers" were later identified as Escandell, Camacho, Orestes Hernandez, and Negrin. The men approached Gonzalez's car with guns drawn and told him he was under arrest. Gonzalez was removed from his vehicle, handcuffed, duct-taped, and thrown into the back seat of the Caprice. Armando Gonzalez was blindfolded with duct tape so he could not see. Negrin took Gonzalez's truck, and Orestes Hernandez drove behind in his own vehicle. The kidnappers stole Gonzalez's wallet, cash, jewelry (including a gold Start of David), and watch.

Gonzalez was driven to Camacho's house where his truck was parked inside the garage. He was severely beaten, and his pants were lowered so that the men could use a blow torch on his genitals. Both his buttocks and thighs were burned. Several times the men inserted the blow torch in Gonzalez's rectum and lit it. The kidnappers also used a stun gun on Gonzalez's arms. They applied the torch to Gonzalez's eyes, actually burning the duct tape that covered them.

The kidnappers demanded the alarm code to the house that Gonzalez was sharing with his girlfriend. Gonzalez gave the men the code, and they ransacked the house stealing jewelry, men's clothing and $30,000 in cash receipts from his gas station. The kidnappers told Gonzalez many things about his family and his business, including where his girlfriend worked, that one of his sons drove a black jeep, and where his other son attended school. When the men returned, they placed Gonzalez in the back of his Dodge truck and dropped him at an unknown location. Gonzalez was left tied in the back seat of his truck and told not to contact the police because they would be watching his family. Gonzalez did not go to the police. Only when Escandell was arrested in connection with another kidnapping did Gonzalez's kidnapping get reported by Escandell.

On January 10, 1997, Gonzalez was interviewed and shown a photo lineup by Detective LeFebvre. Gonzalez positively identified Negrin. Photographs of Orestes Hernandez and Camacho were not shown to Gonzalez, but Gonzalez did state that the man who did most of the talking had a stutter, and Orestes Hernandez has a stutter. On January 11, 1997, Negrin was arrested at his home. He gave consent to have his apartment searched. Gonzalez's Star of David medal, as well as a large amount of other jewelry and walkie talkies were found in the apartment. A stun gun was found in his car.

*Diaz*, 248 F.3d at 1080-81 (internal citations to record evidence omitted).

### C. Applicable Jury Instructions

**§ 924(c) Violation.** The jury was instructed, in relevant part, that Movant was charged in Counts 6, and 11 with carrying or using a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). [CR ECF No. 445 at 23]. Specifically, to convict Movant of violating § 924(c), the jury was instructed it had to prove beyond a reasonable doubt that: (1) "the Defendant committed the specific robbery, **extortion <u>or</u> car jacking** offense as alleged in the indictment;" (2) "during and in relation to the commission of that offense the Defendant used or carried a firearm, as charged; and" (3) "the Defendant used or carried the firearm knowingly. [*Id.*] (emphasis added). "Use" means "actively employed" by "brandishing, displaying, bartering," "but it may also include the mere mention or disclosure of the firearm's presence in a manner intended to intimidate or influence others." [*Id.*] (emphasis added).

**Attempted Hobbs Act Extortion.** The jury was specifically instructed as to attempted interference with commerce by Hobbs Act Extortion--by force or threats of force--in violation of 18 U.S.C. § 1951(a), as to Count 4 (the facts surrounding Idania Arias and her children) and Count 9 (the facts surrounding Armando Gonzalez). [CR ECF No. 445 at p. 16]. In relevant part, to find Movant guilt of extortion, the government was required to prove the following facts beyond a reasonable doubt: (1) "That the Defendant induced the person described in the indictment to part with property;" (2) "That the Defendant did so knowingly and willfully by means of 'extortion,' as hereafter defined; and" (3) "That the extortionate transaction delayed, interrupted or adversely affected interstate commerce. [*Id.*]. The court further defined **extortion** as the "means to obtain property from someone else with that person's consent, but whose consent is brought about or induced **by wrongful use of actual or threatened force, violence or fear.**" [*Id.*] (emphasis added). To be found guilty of "attempt," the court stated that the defendant "must have been acting with the kind of culpability otherwise required for the commission of the crime which he or she is

- 13 -

charged with attempting to commit; and the Defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime." [*Id.* at 17].

**Carjacking.** The court also instructed the jury that Movant was charged in Counts V and X with carjacking, a violation of 18 U.S.C. § 2119. [CR ECF No. 445 at 21]. To convict Movant of carjacking, the jury had to find the following facts, beyond a reasonable doubt that: (1) Movant "took a motor vehicle from the person or presence of another;" (2) Movant "did so by force and violence or intimidation;" (3) "the motor vehicle previously had been transported, shipped, or received in interstate or foreign commerce; and" (4) Movant "intended to cause death or serious bodily harm when the Defendant took the motor vehicle." [*Id.*]. The term "by force and violence" means the use of actual physical strength or actual physical violence." [*Id.*].

## V. Discussion

### B. Counts 6 and 11

In order for this Court to grant Movant's habeas claim, Movant must establish that the jury based his § 924(c) convictions in Counts 6 and 11 only on his convictions for attempted Hobbs Act extortion and not carjacking. On this record, Movant has not met his burden of proof.

Here, Movant's convictions for attempted Hobbs Act extortion and carjacking are similarly intertwined. The carjacking convictions in Count 5, based on the Arias episode, and Count 10, based on the Gonzalez episode, were affirmed by the Eleventh Circuit based on sufficiency of the evidence, finding the thefts of the Arias and Gonzalez vehicles were "an essential part" of the plan to extort money "or rob the victims." *Diaz,* 248 F.3d at 1096-98.

The Eleventh Circuit came to the same result in *Granda* where the defendant's § 924(c) convictions rested upon conspiracy to commit Hobbs Act Robbery, which was no longer a crime of violence after *Davis*, as well as drug trafficking, carjacking, and attempted Hobbs Act Robbery. *Granda*, 990 F.3d at 1290. The defendant was part of a group of conspirators who intended to rob

- 14 -

a truck containing cocaine and then sell the stolen cocaine. *Id*. The Court found that the jury could not have found the defendant possessed the firearm in relation to one predicate offense but not the others. *Id*. The Court explained that "the alternative offenses are inextricably intertwined – each arose from the same plan and attempt to commit armed robbery of a tractor-trailer full of cocaine." *Id*. at 1291.  The Court continued that the "tightly bound factual relationship of the predicate offenses precludes Granda from showing a substantial likelihood that the jury relied solely on Count 3 [the invalid predicate offense] to predicate its conviction on Count 6." *Id*.

*Granda* pointed to an identical result in *In re Cannon,* 931 F.3d 1236, 1243 (11th Cir. 2019), where the movant challenged his § 924(c) and § 924(o) convictions on the basis that one of the underlying predicates--conspiracy to commit Hobbs Act robbery--no longer qualified as a "crime of violence" under the residual clause of § 924(c)(3)(B). *Cannon,* 931 F.3d at 1240. The Court determined that two of the defendant's § 924(c) convictions survived *Davis. Cannon,* 931 F.3d at 1242. The court found there were multiple predicate offenses, including two carjackings, four drug crimes, and the conspiracy to commit Hobbs Act robbery. *Cannon,* 931 F.3d at 1243. The court observed that "Cannon's predicate crimes seem inextricably intertwined" because "it is difficult to see how a jury would have concluded that [he] was guilty of using a firearm during and in furtherance of the underlying Hobbs Act predicates without at the same time also concluding that he did so during and in furtherance of the underlying drug and carjacking predicates." *Cannon,* 931 F.3d at 1243. Similarly, here, "it is difficult to see how a jury would have concluded that [Hernandez] was guilty of using [and carrying] a firearm during and in [relation to] the underlying [attempted] Hobbs Act [extortion] predicate[] without at the same time [] concluding that he did so during and in [relation to] the underlying . . . carjacking predicate[]." *Id.*.

Hernandez's co-defendant, Sergio Echevarria, who was also convicted of Count 6, raised the same argument in his habeas case. In analyzing Echevarria's habeas claim with respect to

Count 6, the district judge found that in this case the Hobbs Act extortion and the carjacking offense were "inextricably intertwined." *Echevarria v. United States*, No. 19-23482, 2021 WL 4145205 (11th Cir. Sept. 13, 2021). The co-conspirators, including Hernandez, approached Arias in her car with their guns drawn, kidnapped her and her children and stole her car as part of the extortion scheme. Hernandez, along with some of his co-conspirators also approached Gonzalez in his vehicle with guns drawn and took his vehicle as part of that extortion scheme. The jury found Hernandez and Echevarria guilty of the carjacking counts on each occasion. Movant committed the carjacking during and in the course of and in furtherance of the attempted Hobbs Act extortion offenses. The jury could not have found Hernandez and Echevarria guilty of using and carrying the firearm in one offense without finding the same as to the other.

For these reasons, Movant has not shown a likelihood that the jury based its § 924(c) convictions in Counts 6 and 11 on only the attempted Hobbs Act extortion convictions, as charged in Counts 4 and 9, without also relying upon Movant's convictions for carjacking, as charged in Counts 5 and 10. Thus, Movant has not met his burden of proof under § 2255 on this *Davis* claim.

3. <u>Gomez Argument</u>

Movant's reliance on *In re Gomez,* 830 F.3d 1225 (11th Cir. 2016) fails. Movant asserts that the superseding indictment was "duplicitous," because it listed multiple predicate offenses, attempted Hobbs Act extortion and carjacking, to support the § 924(c) convictions. [CV ECF No. 7 at 11]. Like *Gomez,* Movant explains that the general verdict of guilty in his case did not reveal a unanimous finding that Movant was guilty of "'one of the potential predicate offenses, all of the predicate offenses, or guilty of . . .some but not others.'" [*Id.* at 11-12 (citing *Gomez,* 830 F.3d at 1226-27)]. *Gomez* reasoned:

> It is certainly possible that the government may have presented evidence that [the applicant] "possessed" a firearm at some point during the ongoing Hobbs Act conspiracy. But, the evidence may likewise have shown that he left that firearm at

- 16 -

> home for the drug trafficking crimes, or the attempted robbery. And we can't know what, if anything, the jury found with regard to [the applicant's] connection to a gun and these crimes.

*Gomez,* 830 F.3d at 1227. The Eleventh Circuit suggested that "[a]n indictment that lists multiple predicates in a single § 924(c) count allows for a defendant's mandatory minimum to be increased" in a way that violates the Supreme Court's decision in *Alleyne v. United States,* 570 U.S. 99 (2013). *Gomez,* 830 F.3d at 1227. In *Alleyne,* the United States Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" "and found beyond a reasonable doubt." *Alleyne,* 570 U.S. at 116. Thus, the *Gomez* court expressed concern that a duplicitous indictment could require the court to "guess which predicate the jury relied on" and engage in unconstitutional "judicial factfinding" when it comes to increasing a defendant's mandatory minimum sentence." *Gomez,* 830 F.3d at 1227-28.

The Eleventh Circuit, however, made clear in *Gomez* that "the question of whether *Johnson* invalidate[d] [his] sentence must be decided in the first instance by the [d]istrict [c]ourt" and that "[i]t is the job of the district court to decide every aspect of [his] motion . . . *de novo." Gomez,* 830 F.3d at 1228. Thus, this court can, in the first instance, determine whether Movant has met his burden of proof by demonstrating that the jury based its verdict on the attempted Hobbs Act extortion offenses, rather than the carjacking offenses to support his § 924(c) convictions as charged in Counts 6 and 11.

As the Eleventh Circuit noted in *Granda,* "*Gomez* does not stand for the proposition that a court may not inquire as to which of several alternative predicates actually supplied the basis for a § 924(c) (or (o)) conviction or that a court is constrained to assume the verdict rested on the least culpable predicate offense." *Granda,* at 1296.

Although Movant explicitly states he is not raising a *Stromberg* claim, he argues that the *Stromberg* opinion is instructive as to why his *Davis* claims should be meritorious because the

general jury verdict, as to Counts 6 and 11, could have "theoretically" been based on either the attempted Hobbs Act extortions or carjacking offenses. [ECF No. 7 at 13-14]. For the reasons already noted, Movant is mistaken.

Moreover, a general jury verdict is valid as long as it is supported by one of the submitted grounds. *Griffin,* 396 U.S. at 420-21; *Turner v. United States,* 396 U.S. 398, 420-21 (1970)("the general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.")(citations omitted); *United States v. Grimsley,* 2020 WL 1672777, at *5 (11th Cir. 2020)(per curiam)(citing *Griffin,* 502 U.S. at 49)(finding sufficient evidence to support defendant constructively possessed firearm and ammunition). If an offense may be committed by several means, the government may charge the offense conjunctively and satisfy its burden of proof by any one of the means, i.e., disjunctively. *See United States v. Cornillie,* 92 F.3d 1108, 1110 (11th Cir. 1996); *United States v. Griffin,* 705 F.2d 434, 436 (11th Cir. 1983).

Section 924(c) proscribes several means by which the offense may be committed. *See e.g., United States v. Lott,* 310 F.3d 1231, 1246-47 (11th Cir. 2002). A defendant violates § 924(c) by using or carrying a firearm during and in relation to a crime of violence or drug trafficking offense; or, by possession a firearm in furtherance of a crime of violence or drug trafficking offense. *See United States v. Timmons,* 283 F.3d 1246, 1250-53 (11th Cir. 2002); *United States v. Daniel,* 173 F. App'x 766, 770 (11th Cir. 2006).

Where an Indictment, like the Movant's, charges in the conjunctive several means of violating a statute, "a conviction may be obtained on proof of only one of the means, and accordingly the jury instructions may properly be framed in the disjunctive." *See United States v. Jackson,* 2020 WL 2095970, at *7 (11th Cir. 2020)(per curiam)(quoting *United States v. Simpson,*

- 18 -

228 F.3d 1294, 1300 (11th Cir. 2000); and *United States v. Burton,* 871 F.2d 1566, 1573 (11th Cir. 1989)). Thus, allegations that are conjunctive "do not render the indictment duplicitous." *See Jackson,* 2020 WL 2095970 at *7 (citing *Burton,* 872 F.3d at 1573).

Here, Movant has not established the jury relied solely upon the attempted Hobbs Act extortion predicates rather than the carjacking predicates to convict him of Counts 6 and 11, which were based on the events of January 11, 1996 and November 13, 1996, respectively. [CR ECF No. 330]. Consequently, Movant has not met his burden, failing to show that it is more likely than not that his convictions on Counts 6 and 11 were based on offenses that relied upon the now invalidated residual clause rather than the elements clause.

4. Actual Innocence

Next, Movant argues that he is actually innocent as to Counts 6 and 11, because the offense charged both attempted Hobbs Act extortion and carjacking as the predicate offenses to support the convictions.

For Movant to prevail on an "actual innocence" claim, he must demonstrate that he is factually innocent of the charges. *Johnson v. Fla. Dep't of Corr.,* 513 F.3d 1328, 1334 (11th Cir. 2008)(quoting *Bousley,* 523 U.S. at 623. "Actual innocence claims must be supported with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" *Rich v. Dep't of Corr. State of Fla.,* 317 F. App'x 881, 882 (11th Cir. 2008)(per curiam)(quoting *Schulp v. Delo,* 513 U.S. 298, 303 (1995)).

Movant has not met his burden of proof by presenting evidence of factual innocence here. Instead, his claim is one of legal insufficiency--that the § 924(c) is unconstitutionally vague. He has not presented sufficient evidence to undermine the court's confidence in the outcome of his criminal proceedings, *Milton v. Sec'y, Dep't of Corr.,* 347 F. App'x 528, 531-32 (11th Cir. 2009),

and the sufficiency of the evidence as to his § 924(c) convictions was affirmed on appeal. Thus, Movant is not entitled to relief on the basis of actual innocence.

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, for the reasons outlined in this Report, the undersigned recommends denial of a certificate of appealability. If movant disagrees, he may so argue in any objections filed with the district court.

## VII. Recommendations

Title 28 U.S.C. § 2255 establishes a two-step process for granting habeas corpus relief. *See United States v. Brown,* 879 F.3d 1231, 1235 (11th Cir. 2018)(quoting 28 U.S.C. § 2255(b)). "'First, the court must 'vacate and set the judgment aside.'" *Id.* "'Second, the court must choose from among four distinct remedies: (1) discharge the prisoner; (2) resentence the prisoner; (3) grant the prisoner a new trial; or, (4) correct the prisoner's sentence." *Id.* Also, when a "sentencing package becomes unbundled. . . the district court has the authority to recalculate and reconsider defendant's sentence for it to comport with the district court's original intentions at sentencing." *See United States v. Fowler,* 749 F.3d 1010, 1016-17 (11th Cir. 2014)(internal quotation and brackets omitted). As discussed above the court is recommending that the motion be granted in part and denied in part.

For the reasons discussed in this Report, it is recommended that Movant's Motion to Vacate [CV ECF No. 7] be GRANTED IN PART and DENIED INPART, as follows:

  1.   Movant's § 2255 motion be GRANTED, solely to the extent that Movant's conviction and sentence as to Count 3 be vacated;

2.   Movant's motion be DENIED as to his *Davis* challenge to his remaining § 924(c) convictions and sentences as charged in Counts 6 and 11;

3.   Movant be resentenced in accordance with *Fowler,* 743 F.3d at 1016-17;

4.   That Judgment be entered in this case; and,

5.   The case CLOSED.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Signed this 15th day of November, 2021.


UNITED STATES MAGISTRATE JUDGE

cc:   Andrew L Adler, AFPD
      Attorney for Movant
      Federal Public Defender's Office
      One East Broward Boulevard
      Suite 1100
      Fort Lauderdale, FL 33301
      Email: Andrew_Adler@fd.org

      Sean Paul Cronin, AUSA
      United States Attorney's Office
      99 NE 4th Street
      Miami, FL 33132
      Email: sean.p.cronin@usdoj.gov